

**NUMBER 13-08-347-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**ISAIAS SOTO,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                 **Appellee.**

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Vela**

Appellant, Isaias Soto, was indicted for possession of cocaine in an amount more than four grams but less than 200 grams, a second-degree felony (trial court cause no. 07-CR-3106-G). *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (Vernon 2003). Soto entered an "open" plea of guilty to the offense, and the trial court assessed punishment at twenty years' imprisonment, to run concurrent with a two-year sentence in

a separate possession-of-cocaine charge, a state jail felony (trial court cause no. 08-CR-521-G). *See id*. § 481.115(a), (b). In four issues, Soto argues that 1) the trial court abused its discretion in sentencing him to twenty years' imprisonment, 2) his plea was involuntary, 3) the twenty-year sentence constituted cruel and unusual punishment, and 4) he received ineffective assistance of counsel. We affirm.

## I. Plea Hearing

After the trial court admonished Soto, he entered an open plea of guilty to the above-mentioned offenses. With respect to cause number 08-CR-521-G, the prosecutor recommended "two years to serve in the state jail." With respect to cause number 07-CR-3106-G, the prosecutor asked "for 20 years TDC, and to run both cases together. . . . [W]e're asking the Court to try to stay there, or as close to that as possible, Your Honor." In response, defense counsel stated, "[W]e would ask that the charges run concurrent. And on the second–degree felony, Mr. Soto be given the lower end, with the two to twenty, Your Honor. . . ."

After the trial court assessed a twenty-year sentence in cause number 07-CR-3106-G, defense counsel told the trial court, "I think that the original offer was capped at 15 years." To this, the prosecutor remarked, "Your Honor, we had that before another problem arose." The trial court stated, "Well, there was no plea offer here. This was made pursuant to an open plea." The trial court, in cause number 07-CR-3106-G, assessed punishment at twenty years' imprisonment to run concurrent with the sentence assessed in the state jail felony, cause number 08-CR-521-G. The trial court, in cause number 08-CR-521-G, assessed punishment at two years' confinement in a state jail facility to run concurrent with the sentence assessed in cause number 07-CR-3106-G.

This appeal involves only Soto's conviction in cause number 07-CR-3106-G.[1]

## II. Discussion

A. *Abuse of Discretion*

In his first issue, Soto argues the trial court abused its discretion in sentencing him to twenty years' imprisonment. A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 390-91.

In our review of a trial court's determination of the appropriate punishment in any given case, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Baldridge v. State*, 77 S.W.3d 890, 893-94 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). It is "the general rule that as long as a sentence is within the proper range of punishment it will not be disturbed on appeal." *Jackson*, 680 S.W.2d at 814. A trial court will be found to have abused its discretion only if there is no evidence or factual basis for the punishment imposed. *Id*.; *Benjamin v. State*, 874 S.W.2d 132, 135 (Tex. App.–Houston [14th Dist.] 1994, no pet.).

Soto pleaded guilty to the offense of possession of cocaine in an amount more than four grams but less than 200 grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d). Section 12.33 of the penal code provides that the

---

[1]The trial court signed a document entitled, "TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL" in which the court certified that this case "is not a plea-bargain case, and the defendant has the right of appeal."

punishment range for a second-degree felony is imprisonment for a term of not more than twenty years or less than two years, and a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. § 12.33(a), (b) (Vernon 2003). The punishment assessed by the trial court—confinement for twenty years—is within the punishment range established by the Legislature for a person convicted of a second-degree felony. *See id.*

Soto argues the trial court abused its discretion in three ways: (1) the trial court "disregarded a previously agreed to 'cap' on the open plea"; (2) "the trial court sentence[d] [him] to the maximum sentence without allowing [him] to withdraw his plea of guilty"; and (3) "the sentence was unfair because of the method employed by the trial court to determine the punishment." We address each argument separately.

1. *Whether the Trial Court Disregarded A Cap On The Open Plea*

Absent a showing to the contrary, a reviewing court presumes the regularity of both judgments and plea proceedings. *Davis v. State*, 130 S.W.3d 519, 522 (Tex. App.–Dallas 2004, no pet.); *see Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986). The appellant bears the burden to overcome this presumption. *Davis*, 130 S.W.3d at 522.

"A plea agreement is a contractual arrangement. Until all of the necessary parties agree to the terms of the contract, the agreement is not binding." *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996). A trial court is free to either accept or reject a plea-bargain agreement. *Davis*, 130 S.W.3d at 522. Until the court accepts it, a negotiated plea-bargain agreement is not binding on the parties. *Ortiz*, 933 S.W.2d at 104; *Holland v. State*, 112 S.W.3d 251, 254-55 (Tex. App.–Austin 2003, no pet.). When expressly approved by the trial court in open court, however, a plea-bargain agreement becomes a binding contractual arrangement between the State and the defendant. *Ortiz*, 933 S.W.2d at 104; *Wright v. State*, 158 S.W.3d 590, 593-94 (Tex. App.–San Antonio

4

2005, pet. ref'd). Under these circumstances, the trial court is bound to carry out the terms of the agreement. *Holland*, 112 S.W.3d at 255. Thus, an accused is entitled to specific performance of a plea agreement only if the trial court accepts and approves the negotiated plea agreement. *Id*.; *see Ortiz*, 933 S.W.2d at 104; *Perkins v. Court of Appeals*, 738 S.W.2d 276, 283 (Tex. Crim. App. 1987).

Nothing, other than Soto's assertions in his appellate brief, indicates the existence of a "previously agreed to 'cap' on the open plea." In this case, the record provides no evidence that a fifteen-year cap on punishment ever became binding, and Soto has cited no authority suggesting that a trial court is bound by prior plea negotiations which did not result in a plea-bargain agreement. Furthermore, the record does not reveal, nor does Soto assert, that the trial court conducted a hearing on any plea agreement or punishment cap pursuant to article 26.13(a)(2). *See* TEX. CODE CRIM. PROC. ANN. art 26.13(a)(2) (Vernon 2009).[2] No evidence in the record showed the trial court accepted any plea agreement or punishment cap. A plea agreement does not become binding until all necessary parties agree to its terms. *Ortiz*, 933 S.W.2d at 104; *Davis*, 130 S.W.3d at 522. Because the record lacks evidence showing the trial court's agreement to any plea bargain or punishment cap, we conclude the fifteen-year punishment cap even if "agreed to," never

---

[2]Article 26.13 of the code of criminal procedure provides, in relevant part:

(a) Prior to accepting a plea of guilty . . . the court shall admonish the defendant of:

. . . .

(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea his plea of guilty. . . .

TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2) (Vernon 2009).

became binding. Soto has presented no evidence, nor does the record reflect any, that overcomes the presumption of regularity in the judgment and plea proceedings at issue. *See Davis*, 130 S.W.3d at 522. Accordingly, we resolve this argument adversely to him.

### 2. *Whether The Trial Court Proceeded To Sentence Soto To The Maximum Sentence Without Allowing Him To Withdraw His Guilty Plea*

If a trial court rejects a plea-bargain agreement, the defendant's plea is rendered involuntary, and the defendant is entitled to withdraw the guilty plea. *Holland*, 112 S.W.3d at 255 (citing *Zinn v. State*, 35 S.W.3d 283, 285 (Tex. App.–Corpus Christi 2000, pet. ref'd)). Nothing, other than Soto's assertions in his appellate brief, indicates that the trial court "proceeded to sentence [him] to the maximum sentence without allowing [him] to withdraw his plea of guilty." Neither Soto nor his defense counsel made any request to withdraw the guilty plea. We find that Soto has presented no evidence, nor does the record reflect any, that overcomes the presumption of regularity in the judgment and plea proceedings at issue. *See Davis*, 130 S.W.3d at 522.

### 3. *Method Employed For Punishment*

Soto also argues the trial court violated his right to due process because it arbitrarily refused to consider the entire range of punishment and refused to consider mitigating evidence, imposing a predetermined punishment. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. 1, § 19.

#### a. *Applicable Law*

"The Constitutional mandate of due process requires a neutral and detached judicial officer who will consider the full range of punishment and mitigating evidence." *Buerger v. State*, 60 S.W.3d 358, 363-64 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd); *see Gagnon v. Scarpelli*, 411 U.S. 778, 786-87 (1973). A trial court denies due process when

6

it arbitrarily refuses to consider the entire punishment range for an offense or it refuses to consider mitigating evidence and imposes a predetermined punishment. *Buerger*, 60 S.W.3d at 364 (citing *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983)). However, absent evidence to the contrary found within the appellate record, we presume the trial court acted as a neutral and detached officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Vick v. State*, 268 S.W.3d 859, 861 (Tex. App.–Texarkana 2008, pet. ref'd); *Jaenicke v. State*, 109 S.W.2d 793, 796 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd).

      b. *Analysis*

After the trial court accepted Soto's guilty pleas, defense counsel told the trial court that Soto had "one prior state jail conviction where he served one year in a state jail facility."[3] Before the trial court assessed punishment, Soto told the trial court that he had a drug problem.[4] Upon hearing this, the trial court commented, "You have a long severe history of substance abuse. The Court will review the exhibit that was marked." The exhibit admitted during the plea hearing with respect to cause number 07-CR-3106-G showed Soto possessed 13.59 grams of cocaine. After the court assessed the twenty-year sentence, it told Soto, "Mr. Soto, you need to get away from the drugs for a long time; otherwise you're going to kill yourself. And the only way to do that is to make sure you are

---

[3]The nature of this offense does not appear in the record; however, we note that the offense was not the subject of any enhancement provision.

[4]Soto addressed the trial court as follows:

> Yes, sir. I'm just taking responsibility for what I did. You know, what I had on me, and everything. And hopefully, you know, I get a good—you know, you do me a good sentence, you know what I mean.

> I had a drug problem at the time, you know. And—well, at the time I did, and I just hope when I get out, you know, I can start my life over again. That's about it, sir.

7

locked up."

The court's statements reflect consideration of the evidence, Soto's criminal history, and the court's knowledge of the dangerousness of substance abuse. The trial court's statements are not sufficient to rebut the presumption of a neutral and detached trial court. The statements do not show that the trial court failed to consider the full punishment range, nor do they reveal a predetermined punishment or a failure to consider mitigating evidence. What the statements reflect is the trial court's concern for Soto's substance-abuse problem. Therefore, we conclude the trial court did not infringe upon Soto's due process rights.

The evidence, combined with the fact that Soto had a prior state jail felony conviction, supported the trial court's decision to sentence Soto to twenty years' imprisonment. Because the trial court had before it evidence that supported the twenty-year sentence, we cannot say it acted without reference to any guiding rules and principles, or that it acted in an arbitrary or capricious manner. *See Montgomery*, 810 S.W.2d at 380, 390-91. We conclude that the trial court's sentence is at least within the zone of reasonable disagreement. Therefore, we hold the trial court properly exercised its discretion by sentencing Soto to twenty years' imprisonment. *See Jackson*, 680 S.W.2d at 814. Issue one is overruled.

B. *Voluntariness Of Plea*

In his second issue, Soto argues that his plea was involuntary because the twenty-year sentence exceeded the punishment range explained to him by his defense counsel. Specifically, he argues his guilty plea was involuntary because he pleaded guilty based upon an erroneous belief that he would receive a sentence less than the maximum punishment. He argues trial counsel explained to him that: (1) if he pleaded "open" to the

8

trial court, then he would receive a sentence which was less than a sentence a jury would give him; and (2) he believed he was protected by a fifteen-year punishment "cap" in which the trial court was bound to sentence him to a term not to exceed fifteen years.

1. *Applicable Law*

"A defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and article 26.13 is presumed to have entered a voluntary and knowing plea." *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004) (footnote omitted). In considering the voluntariness of a guilty plea, the appellate court "should examine the record as a whole." *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). "A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily." *Id.* "A defendant may still raise the claim that his plea was not voluntary; however, the burden shifts to the defendant to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm." *Id*.

The mere fact a defendant may have received a higher punishment than he or she anticipated or hoped for does not render the guilty plea involuntary. *Thomas v. State*, 2 S.W.3d 640, 642 (Tex. App.–Dallas 1999, no pet.). Furthermore, a guilty plea is not involuntary simply because the sentence exceeded what the defendant expected, even if defense counsel raised that expectation. *Houston v. State*, 201 S.W.3d 212, 217-18 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Hinkle v. State*, 934 S.W.2d 146, 149 (Tex. App.–San Antonio 1996, pet. ref'd).

2. *Analysis*

Here, the evidence does not rebut the presumption that Soto's plea was voluntary.

The appellate record contains the "Court's Written Admonishments To Defendant On

Defendant's Plea Of Guilty Or Nolo Contendere." Attached to this document are two

documents. The first is entitled "Court's Written Admonishments On Range Of

Punishment," and the second is entitled "Defendant's Statement Understanding

Admonishments." The first document provided, in relevant part:

> The range of punishment for the offense that you are charged with or are entering a plea of guilty/nolo contendere[5] to is for a second degree felony. Punishment for such a felony is noted in the paragraphs marked [xx] or highlighted. In addition to imprisonment or confinement, a fine may also be imposed.
>
>         . . . .
>
> [ √ ] Second Degree Felony Punishment, §12.33: One guilty of a Second degree felony shall be punished by imprisonment for any term of not more than 20 years or less than 2 years, by a fine not to exceed $10,000.

The second document, which was signed and initialed by Soto, stated, among other things,

that Soto understood the written admonishments and that he knowingly and voluntarily

pleaded guilty to the offense. At the plea hearing,[6] Soto's responses to the trial

---

[5]The word "guilty" is circled.

[6]At the plea hearing, the trial court questioned Soto as follows:

Court:        All right. Mr. Soto, I have two sets of paperwork. There's one set of paperwork for each case. In this paperwork the Court explains your rights, the range of punishment in the one instance for a state jail offense, and the other one for a second degree felony. It appears that you have signed and initialed sections of the paperwork where you tell the Court that you understand your rights and give up certain rights.

Mr. Soto:     Yes, sir.

Court:        Okay. Did you and your lawyer in fact go over all of this paperwork?

Mr. Soto:     Yes, sir.

Court:        Okay. And did he explain it all to you?

Mr. Soto:      Yes, sir.

Court:         And did you understand all of it?

Mr. Soto:      Yes, sir.

Court:         Did you sign it and initial it?

Mr. Soto:      Yes, sir.

Court:         And the Court notes that there is not an application for probation. And then there is the trial court's notice to you at the conclusion of this paperwork that since this case is not being resolved through a plea agreement, you will have the right to appeal any decision made by the trial Court that is appealing [sic]. And I'm going to give you a copy of that. All right. Did you in fact go over this paperwork with your lawyer?

Mr. Soto:      Yes, sir.

Court:         And did you sign it?

Mr. Soto:      Yes, sir, I did.

Court:         Did anyone force you to sign it?

Mr. Soto:      No, sir.

Court:         Did anybody promise you anything to get you to sign it?

Mr. Soto:       No, sir.

Court:         And did you sign all of this freely and voluntarily?

Mr. Soto:      Yes, sir.

Court:         Okay. And do you understand that you do have the right to a jury trial, but by signing the paperwork and entering a plea you're giving up that valuable and important constitutional right?

Mr. Soto:      Yes, sir, I understand.

Court:         And knowing all of that, do you wish to proceed today with a plea in each of these cases?

Mr. Soto:      Yes, sir.

Court:          All right. The Court will accept the paperwork that you signed with your lawyer, Mr. Soto. We'll do the oldest one first. In Cause 07-CR-3106, the State alleges that you unlawfully possessed cocaine in Nueces County on or about September 5, 2007, in an amount more than four but less than 200 grams. To that allegation how do you plea?

Mr. Soto:      I plea guilty, sir.

Court:         In Cause 08-CR-521, I understand that the State is proceeding on a state

11

court's questions showed he understood the written admonishments and that he knowingly and voluntarily pleaded guilty.

Considering the totality of the circumstances viewed in light of the entire record, we conclude Soto has failed to meet his burden that his plea was not voluntary. *See Martinez*, 981 S.W.2d at 197. The second issue is overruled.

C. *Cruel And Unusual Punishment*

In his third issue, Soto argues his sentence constituted cruel and unusual punishment.[7] He contends the sentence is "grossly disproportionate" to the seriousness of the crime committed and asks this Court to apply the *Solem* proportionate analysis test to his sentence. *See Solem v. Helm*, 463 U.S. 277, 290-92 (1983).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amends. VIII, XIV; *see* TEX. CONST. art. I, § 13. The Eighth Amendment is applicable to

---

jail amount. So with regard to that indictment to the lesser included offense of the offense alleged in the indictment, how do you plea?

| | |
|---|---|
| Mr. Soto: | Plea guilty, sir. |
| Court: | All right. Has anyone forced you to plea guilty? |
| Mr. Soto: | No, sir. |
| Court: | Has anybody promised you anything[?] |
| Mr. Soto: | No, sir. |
| Court: | Are you pleading guilty to each case freely and voluntarily? |
| Mr. Soto: | Yes, sir. |
| Court: | Are you pleading guilty to each case because you are in fact guilty? |
| Mr. Soto: | Yes, sir. |

[7]Soto's appellate counsel filed a motion for new trial, alleging, in relevant part: "The defendant feels that the maximum sentence of twenty years is too great a sentence given the surrounding circumstance of the instant offense and the defendant's relative lack of criminal history. The defendant feels the sentence is cruel and unusual punishment." The motion was overruled by operation of law.

punishments imposed by state courts through the Fourteenth Amendment's Due Process Clause. *Robinson v. California*, 370 U.S. 660, 667 (1962). The Eighth Amendment does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). The precise contours of the "grossly disproportionate" standard are unclear, but it applies only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the punishment assessed falls within the range prescribed by the Legislature in a valid statute, the punishment is not excessive. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.–Corpus Christi 2005, pet. ref'd); *see also Escochea v. State*, 139 S.W.3d 67, 80 (Tex. App.–Corpus Christi 2004, no pet.).[8]

As previously stated, Soto's sentence fell within the applicable range of punishment. However, that does not end the inquiry. Texas courts recognize a prohibition against grossly disproportionate sentences survives under the federal constitution apart from any consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.–Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.–Texarkana 2006, no pet.).

This Court has recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)." *Trevino*, 174 S.W.3d at 928 (citing *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the

---

[8]*Vera v. State*, Nos. 13-05-169, 170-CR, 2006 WL 5181930 *3 (Tex. App.–Corpus Christi Aug. 29, 2008, pet. ref'd) (mem. op., not designated for publication).

13

various opinions issued in *Harmelin* and their impact on the *Solem* decision)); *see Sullivan v. State*, 975 S.W.2d 755, 757-58 (Tex. App.–Corpus Christi 1998, no pet.) (discussing the implications of the *Harmelin* opinion and reviewing the proportionality of appellant's sentence under the *Solem* and *McGruder* tests). Assuming, arguendo, the viability of a proportionality review, as we did in *Sullivan,* we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757-58.[9] In both *Solem* and *McGruder,* we look first at the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290-91; *McGruder*, 954 F.2d at 316.

1. *Gravity of the Offense*

Soto pleaded guilty to possession of cocaine in an amount more than four grams but less than 200 grams, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d). With respect to this offense, the evidence showed he possessed 13.59 grams of cocaine. He also pleaded guilty to a separate charge of unlawful possession of cocaine, a state jail felony. Soto told the trial court that he had a drug problem. Furthermore, the record reflects Soto had a prior conviction for a state jail felony for which he had been incarcerated. When conducting an Eighth Amendment proportionality analysis, we may consider the sentence imposed in light of the accused's prior offenses. *Winchester*, 246 S.W.3d at 390; *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). The gravity of the offense weighs in favor of a finding that the punishment was not excessive.

---

[9]*See also McGiffin v. State*, No. 13-05-561-CR, 2006 WL 2294553, at *1 (Tex. App.–Corpus Christi, Aug. 10, 2006, no pet.) (mem. op., not designated for publication).

## 2. Harshness of the Penalty

The punishment range for a second-degree felony is imprisonment for a term of not more than twenty years or less than two years, and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33(a), (b). Thus, the Legislature considers possession of 13.59 grams of cocaine to be serious enough to deserve a sentence of up to twenty years. In light of the seriousness of the crime to which Soto pleaded guilty and the fact that he was a drug user who had a prior state jail felony conviction for which he had been incarcerated, we cannot say his sentence is excessive. We therefore find that Soto's sentence is not grossly disproportionate to the offense for which he was convicted. This finding ends our analysis under *McGruder*. *See McGruder*, 954 F.2d at 316; *see also Sullivan*, 975 S.W.2d at 757. Because there is no evidence in the appellate record of the sentences imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we can not perform a comparative evaluation using the remaining *Solem* factors. *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757-58. Therefore, we conclude that Soto's sentence is neither grossly disproportionate nor cruel and unusual. We overrule issue three.

## D. *Ineffective Assistance Of Trial Counsel*

In his fourth issue, Soto argues he received ineffective assistance of trial counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. Specifically, he argues that: (1) but for trial counsel's failure to provide effective assistance of counsel, "the judge would not have denied [Soto's] request for community supervision"; (2) he "was greatly influenced in his decision to waive his fundamental right of a trial by jury and enter an open plea of guilty by the recommendations of his trial counsel"; (3) trial counsel failed to admonish him with respect to the consequences of entering an open plea of guilty; (4) he relied on his

15

counsel's assertions that he was protected from the full range of punishment by a "cap"; and (5) he would not have pleaded guilty if he had known the full consequences of his plea.

1. *Standard Of Review*

When a defendant enters his or her plea upon counsel's advice and subsequently challenges the voluntariness of the plea on the basis of ineffective assistance of counsel, the voluntariness of the plea depends on "(1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Forcey v. State*, 265 S.W.3d 921, 925 (Tex. App.–Austin 2008, no pet.). Under the first part of the test, a defendant must overcome a strong presumption that trial counsel was competent. *Mitich v. State*, 47 S.W.3d 137, 141 (Tex. App.–Corpus Christi 2001, no pet.) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Under the second part of the test, we consider both the circumstances surrounding the plea and the gravity of the misrepresentation as it pertained to the defendant's plea determination. *Id*. (citing *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999)).

2. *Analysis*

a. *Request For Community Supervision*

Soto has presented no evidence that his attorney's actions or advice misled him or prevented him from making a voluntary and informed decision to enter a guilty plea. Soto argues that, but for counsel's failure to provide effective assistance, "the judge would not have denied [Soto's] request for community supervision." At the plea hearing, Soto did not

16

ask the trial court to place him on community supervision.[10]

Article 42.12, section 3(a) broadly authorizes a trial judge after a plea of guilty to place an eligible defendant on community supervision whenever he or she deems it "in the best interest of justice, the public, and the defendant" to do so. *Ivey v. State*, No. PD-0552-08, 2009 WL 322340, at *3 (Tex. Crim. App. Feb. 11, 2009); *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a) (Vernon Supp. 2008). The granting of community supervision is a privilege, not a right, and the decision to grant community supervision is wholly discretionary. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). Even if we assume counsel's advice to Soto fell outside the range of competence demanded of attorneys in criminal cases, Soto has failed to show there is a reasonable probability the trial court would have placed him on community supervision had he requested it. *See Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002) (holding that, when it is alleged counsel performed deficiently at the punishment phase, defendant must prove there is a reasonable probability that, but for counsel's errors, the sentencing authority would have reached a more favorable penalty-phase verdict). Soto's assertion that the trial court would have placed him on community supervision had he requested it is not supported by the record. Accordingly, such a finding in this case would be based on speculation and conjecture. An appellate court will not find ineffectiveness based on speculation. *Jaenicke*, 109 S.W.3d at 797; *Henderson v. State*, 29 S.W.3d 616, 624 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd). Assertions of ineffectiveness must be firmly

---

[10]During the plea hearing, Soto addressed the trial court as follows:

Well, I mean, I think—I've never been to TDC before, sir. I've never really been convicted of any harsh crime. I've never caused no problems to the State of Texas besides the drug offenses, you know what I'm saying, sir? And 20 years, I mean, I'm not a very violent offender. I don't cause no trouble when I'm out. I don't really bring no hurt towards people. I'm not an aggravated offender either, sir.

founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

b. *Waiver Of Jury Trial*

Soto's argument that he "was greatly influenced in his decision to waive his fundamental right of a trial by jury and enter an open plea of guilty by the recommendations of his trial counsel" is not supported by the record. Again, such a finding in this case would be based on speculation and conjecture. An appellate court will not find ineffectiveness based on speculation. *See Bone,* 77 S.W.3d at 835; *Jaenicke*, 109 S.W.3d at 797; *Henderson,* 29 S.W.3d at 624.

c. *Counsel's Failure To Admonish*

Soto's arguments that counsel failed to admonish him with respect to the consequences of entering an open plea of guilty, that counsel advised him he was protected from the full range of punishment by a "cap," and that he would not have pleaded guilty if he had known the full consequences of his plea, are not supported by the record. Nevertheless, as we stated in issue two, the "COURT'S WRITTEN ADMONISHMENTS ON RANGE OF PUNISHMENT" stated, in relevant part: "The range of punishment for the offense that you are charged with or are entering a plea of guilty/nolo contendere to is for *a second degree felony*." (emphasis added). This document included the punishment range for a second-degree felony. A check mark appears within brackets preceding this punishment range. Soto signed and initialed the document entitled "DEFENDANT'S STATEMENT UNDERSTANDING ADMONISHMENTS" in which he indicated he understood the written admonishments. His responses to the trial court's questions at the plea hearing show that he understood the punishment range for a second-degree felony and that he pleaded guilty to the offense freely, knowingly, and voluntarily.

Based upon this record, Soto has not met his burden of proving that his guilty plea was made as a result of ineffective assistance of counsel. *See Mitich*, 47 S.W.3d at 141. Issue four is overruled.

## III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 23rd day of April, 2009.